

**SO ORDERED.**

**SIGNED this 25th day of April, 2024.**

                                      LENA MANSORI JAMES
                            UNITED STATES BANKRUPTCY JUDGE

---

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| Chadley Capital, LLC, | ) | Case No. 24-10170 |
| | ) | |
|     Debtor. | ) | Chapter 7 |
| | ) | |

### ORDER
#### HOLDING WILLIAM RHEW, III IN CONTEMPT AND IMPOSING SANCTIONS

This matter came before the Court for hearing on April 24, 2024 on the Order to Show Cause as to why William Rhew, III should not be held in contempt and subject to additional sanctions. (Docket No. 37, the "Show Cause Order"). The Court entered the Show Cause Order following Rhew's non-compliance with the Order Granting Motion for Turnover (Docket No. 33, the "Turnover Order"), which required that Rhew, as the designated person responsible for performing the Debtor's duties (Docket No. 32), deliver to the chapter 7 trustee information and hardware related to the Debtor's cryptocurrency assets. Specifically, the Turnover Order required, in part, that the Debtor and Rhew deliver the following items to the Trustee within twenty-four hours of entry:

    (a) any and all cryptocurrency wallets, hard drives, USB drives, computers, tablets and phones; and

1

> (b) any and all information necessary to take control of and access the cryptocurrency accounts, contents of the aforementioned property, and other electronic records of the Debtor including, but not limited to, passphrases, seed phrases, personal identification numbers, usernames, and passwords.

(Docket No. 33, ¶ 2).

Upon the filing of a declaration by Brian Anderson, the chapter 7 trustee in above-captioned case (the "Trustee"), attesting to Rhew's failure to comply (Docket No. 36), the Court entered the Show Cause Order setting a hearing for April 24, 2024. The Show Cause Order explicitly required Rhew to attend the show cause hearing in person and warned that his failure to do so could result in the Court finding him in contempt and imposing appropriate sanctions. The Trustee and the United States Bankruptcy Administrator were present at the hearing; Rhew did not appear on his own behalf or through counsel at the show cause hearing.

The Trustee testified as to his recent communications with Rhew and introduced into evidence the email exchanges he has had with Rhew since the Show Cause Order was entered. (Ex. A, B, C). The Trustee's testimony and evidence demonstrates that, although Rhew has generally been communicative and made numerous promises to provide requested documents and assets, he has not complied with the Turnover Order.

To hold a party in civil contempt, the Court must find, by clear and convincing, evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's "favor"; (3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) ... that [the] movant suffered harm as a result.

2

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (internal citations omitted).

"Civil contempt is an appropriate sanction if we can point to an order of this Court which sets forth in specific detail an unequivocal command which a party has violated." *In re Gen. Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (internal citation omitted). This Court unequivocally commanded Rhew to comply with the Turnover Order or show cause as to why he could not. Despite having received notice of the Turnover Order and the Show Cause Order by electronic transmission, overnight delivery and first-class mail (Docket No. 34, 36, 39), Rhew has not complied with the Turnover Order and did not appear at the show cause hearing as directed. Both orders also provided Rhew with clear knowledge of what consequences would follow his noncompliance; the Turnover Order provided that if Rhew did not comply with the deadlines therein, the Court would enter an order and set a hearing requiring Rhew to show cause as to why he should not be held in contempt. (Docket No. 33, ¶ 4). The Show Cause Order also warned Rhew that his "failure to attend the show cause hearing on April 24, 2024, may result in an order finding him in contempt of court and imposing appropriate sanctions, including, but not limited to, assessment of a daily monetary fine." (Docket No. 37). Finally, the Court finds that the Trustee, as well as other interested parties in this case, have been harmed by Rhew's noncompliance, which has deprived the bankruptcy estate of valuable assets, prevented the Trustee from liquidating those assets, and added unnecessary cost

and time to administration of this case. Accordingly, the Court finds by clear and convincing evidence that a finding of civil contempt is appropriate.

Having made this finding, "[t]he appropriate remedy for civil contempt is within the court's broad discretion." *Gen. Motors Corp.*, 61 F.3d at 259. Any sanction for civil contempt, however, must be "remedial and temporary," *id.*, and designed to "coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance." *Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir. 1975) (internal citation omitted). Permissible remedies "may include a compensatory fine or coercive daily fine, attorney fees and expenses, as well as coercive incarceration." *Su v. S. Living for Seniors of Louisburg NC, LLC*, No. 5:22-CV-00178, 2023 WL 5814418, at *2 (E.D.N.C. Aug. 25, 2023) (citing *Harris v. McCarthy*, No. CV JKB-18-3562, 2021 WL 4133859, at *2 (D. Md. Sept. 10, 2021)).

In this case, the Court concludes that a coercive daily fine is warranted. There is clear authority supporting the imposition of daily fines to coerce litigants into compliance. *See, e.g.*, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994) (finding that "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order … exert a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged"); *Enovative Techs., LLC v. Leor*, 622 F. App'x 212, 215 (4th Cir. 2015) (noting that "the Supreme Court has allowed daily fines to coerce litigants into compliance"). In determining the amount of a coercive daily fine,

which should be payable to the court and not the opposing party, *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988), the Court must "consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947); *XL Specialty Ins. Co. v. Bighorn Constr. & Reclamation, LLC*, No. CV 21-3068-CDA, 2024 WL 216704, at *3 (D. Md. Jan. 18, 2024). Here, the magnitude of the harm caused by Rhew's ongoing violation is significant and the Court's previous orders directing him to turn over assets as well as its threat to hold Rhew in civil contempt have thus far proved ineffective. Although the Court is unable to accurately determine the financial resources of Rhew, a daily fine of $500 is certainly within the range of permissible per diem fines and is appropriate given the gravity of his misconduct. *See Enovative*, 622 F. App'x at 215 (affirming the district court's imposition of a fine of $1,000 per day for civil contempt); *Certain Underwriters at Lloyd's, London v. AdvanFort Co.*, No. 1:18-CV-1421, 2020 WL 877981, at *1 n.3 (E.D. Va. Feb. 21, 2020) (imposing $1,000 daily fine).

An additional remedy for civil contempt includes "ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *Gen. Motors Corp.*, 61 F.3d at 259. But for Rhew's refusal to cooperate and turn over estate assets as directed, the Trustee would not have incurred additional attorney's fees and costs associated with the emergency turnover motion and the subsequent show cause hearing. The Court, therefore, will require Rhew to compensate the

Trustee for his attorney's fees and costs associated with Rhew's noncompliance, the amount of which will be determined after Rhew ultimately complies with the Turnover Order, or after further court order, and upon the Trustee's filing of an affidavit attesting to the fees and costs incurred.

Finally, federal courts—including bankruptcy courts—may employ coercive incarceration to remedy civil contempt, so long as "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act." *Bagwell*, 512 U.S. at 828-29; *see also Lawrence v. Goldberg (In re Lawrence)*, 279 F.3d 1294, 1297 (11th Cir. 2002) (affirming bankruptcy court's imprisonment of a debtor for civil contempt for failing to comply with a turnover order); *In re CTLI, LLC*, 528 B.R. 359, 379 (Bankr. S.D. Tex. 2015) (providing that failure to comply with turnover order would result in the issuance of a warrant for principal's arrest and incarceration as a civil contempt sanction); *In re 1990's Caterers Ltd.*, 531 B.R. 309, 321 (Bankr. E.D.N.Y. 2015) (providing that, if contemnor did not purge civil contempt by turning over sales proceeds, the Court would order the United States Marshals to take contemnor into custody and hold him until the proceeds were delivered to the trustee). "The coercive sanction of incarceration is especially appropriate where (i) it is unlikely that increased monetary sanctions would improve the likelihood of compliance and (ii) there has been a pattern of noncompliance." *In re 1990's Caterers*, 531 B.R. at 320. Here, Rhew has already demonstrated a pattern of noncompliance. Although the Court will first impose monetary sanctions, including a daily fine, to coerce him into compliance, Rhew's

6

disregard for the Court's orders, the seriousness of his misconduct, and the nature of the assets he is illicitly retaining, convince the Court that coercive incarceration is necessary in the event Rhew continues to ignore the Turnover Order.

After reviewing the record, and in light of his continuing and unjustified refusal to comply with this Court's direct commands to turn over estate assets, the Court finds William Rhew, III in civil contempt of the conditions and commands set forth in the Turnover Order and the Show Cause Order.

Accordingly, IT IS HEREBY ORDERED:

1. Beginning April 26, 2024, the Court imposes a coercive daily fine on William Rhew, III of $500 per day until he has complied with the Turnover Order, which is to be paid to the Clerk of Court for the United States Bankruptcy Court for the Middle District of North Carolina.

2. In addition, William Rhew, III shall pay the Trustee's reasonable attorney's fees and expenses incurred as a result of Rhew's noncompliance with the Turnover Order, including but not limited to, filing and prosecuting the emergency motion for turnover, attending the show cause hearings, and filing declarations regarding Rhew's conduct. The Court reserves its determination on the compensatory amount to be awarded to the Trustee until after Rhew ultimately complies with the Turnover Order, or upon further order of the Court, at which point the Trustee is directed to file an affidavit or declaration setting forth the final amount of his fees and expenses.

3. The Court will set a further hearing at which William Rhew, III must appear and show cause as to why the Court should not find that he remains in contempt of the Turnover Order on May 8, 2024 at 2:00

p.m., in the United States Bankruptcy Court, 601 W. 4th St., Winston-Salem, North Carolina. **William Rhew, III is <u>ORDERED</u> to attend the hearing on May 8, 2024, regardless of whether, and to what extent, he asserts that he has complied with the Turnover Order.**

4. **The Court expressly warns William Rhew, III** that if he does not comply with the Turnover Order by 2:00 p.m. on May 8, 2024, or otherwise show cause, **this Court will issue an order and warrant for Rhew's arrest** directing the United States Marshal Service to take him into custody and hold him until such time as he purges his contempt.

5. The Trustee shall immediately serve a copy of this Order on William Rhew, III, (i) by electronic transmission, (ii) by overnight delivery, and (iii) by first class mail. The Trustee shall also serve a copy of this Order on the Debtor, any counsel representing William Rhew, III, all other parties in interest, and the United States Bankruptcy Administrator by first class mail. The Trustee shall file a certificate of service with the Clerk of Court evidencing such service no later than April 26, 2024.

**END OF DOCUMENT**