IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CHADLEY CAPITAL, LLC** | ) | **CASE NO. 24-10170** |
| | ) | |
| DEBTOR. | ) | **CHAPTER 7** |
| | ) | |

**MOTION TO APPROVE COMPROMISE AND SETTLEMENT**

NOW COMES Brian R. Anderson, Trustee for Chadley Capital, LLC (the "Debtor"), by and through counsel, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and moves the Court for an order approving a compromise and settlement between the Trustee and Pintail Properties, LLC ("Pintail"), and, in support of said Motion, respectfully shows unto the Court the following:

1. On March 12, 2024, an involuntary Chapter 7 petition was filed against the Debtor. On April 5, 2024, an order for relief was entered against the Debtor.

2. The Trustee is the duly authorized and acting Chapter 7 Trustee for the Debtor.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. William Rhew, III ("Rhew") is the sole owner and managing member of the Debtor.

5. Between October 2022 and February 2023, the Debtor transferred $47,660.00 to Pintail (the "Transfers").

6. Upon information and belief, Rhew initiated the Transfers to settle and/or resolve his liability on a personal guaranty of a debt unrelated to Chadley Capital.

7. As detailed in numerous motions and sworn declarations before this Court, the

1

Debtor was a Ponzi scheme created by Rhew in September of 2017. In connection with this scheme, investors were led to believe that their investments were being used by the Debtor to operate in the receivable financing industry as a factoring company. In reality, the Debtor had no legitimate business operations. The Debtor did not operate in the global factoring industry. It did not have a business buying credit receivables or lending funds to companies. It did not have any revenue or any legitimate source of income other than investor funds solicited under false pretenses. Instead, the Debtor used investor funds to make payments to earlier investors, to finance Rhew's personal lifestyle, and to benefit himself or his other business ventures. By its very nature as a Ponzi scheme, the Debtor was insolvent since its inception and at the time of the Transfers. At no point did the Debtor have any legitimate source of funds or revenue other than investor money that was intended to be invested in a factoring company.

8. On April 22, 2025, Rhew pleaded guilty to five counts associated with the Ponzi scheme: wire fraud, money laundering, securities fraud, tax evasion, and willful failure to file a tax return. A Criminal Information, Plea Agreement, and Factual Basis for Guilty Plea were filed with the United States District Court for the Middle District of North Carolina, Case No. 1:25CR142-1.

9. The Trustee contends that the Transfers were made by the Debtor with the intent to hinder, delay, and defraud creditors of the Debtor, that the Debtor was insolvent when the Transfers were made, and that the Debtor did not receive any value in exchange for the transfers. Pintail disputes the Trustee's contentions.

10. The parties have engaged in discussions and negotiations concerning the Transfers and have agreed to settle their disputes pursuant to a Settlement Agreement, attached hereto and incorporated herein as <u>Exhibit A</u>, subject to Bankruptcy Court approval. A summary of the terms

of the Settlement Agreement are as follows[1]:

    (a)    Pintail shall pay a total of $25,000.00 to the Trustee (the "Settlement Payment") as follows:

        i) Five monthly payments of $4,000.00 beginning July 1, 2025 and due on the 1st of the month thereafter; and

        ii) One final payment of $5,000 on or before December 1, 2025

    (b)    Pintail agrees to waive any claim arising from the Settlement Payment in the Debtor's case under 11 U.S.C. § 502(h); and

    (c)    Effective upon delivery of the full Settlement Payment, Pintail and the bankruptcy estate agree to mutually release each other from any and all claims, other than the obligations of the Settlement Agreement.

## LEGAL STANDARD AND ARGUMENT

11.    It is well established that "to minimize litigation and expedite the administration of a bankruptcy estate," compromises are favored in bankruptcy. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996). A determination of whether to approve an application to compromise is a matter within the sound discretion of the bankruptcy judge. *In re Final Analysis, Inc.*, 417 B.R. 332, 341 (Bankr. D. Md. 2009). "In deciding whether a settlement proposed by a bankruptcy trustee should be approved, the bankruptcy court should make an informed, independent judgment as to whether a settlement is fair and equitable and in the bests interests of the estate." *Safeco Ins. Co. of Am. v. Yaeger (In re Magna Corp.)*, No. 01-80763, 2003 WL 22078082, at *3 (Bankr. M.D.N.C. Aug. 29, 2003) (citing *Protective Comm. For Indep. Stockholders Of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) and *In re Energy Coop,*

---

[1] To the extent the summary of the terms in this paragraph and subparagraphs conflict with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

172833409.1

*Inc.*, 886 F.2d 91 (7th Cir. 1989)). "It is the court's responsibility to 'canvass the issues and see whether the settlement "falls below the lowest point in the range of reasonableness."'" *Id.* (internal citations omitted). "Central to this determination is a comparison of the terms of the settlement with the probable outcome and cost if the litigation or matter in dispute is not settled." *Id.*

12. Factors to be considered in determining whether the settlement is within the range of reasonableness include: (i) the probability of success in litigation, (ii) the likely difficulties of collection, (iii) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it, and (iv) the paramount interest of the creditors. *See In re Energy Future Holdings Corp.,* 648 F. App'x 277, 281 (3d Cir. 2016); *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *In re AuditHead, LLC*, 625 B.R. 319, 323 (Bankr. D.S.C. 2021); *In re D & R Distribs.*, 2016 WL 4821257, at *2 (Bankr. N.D. W.Va. Sept. 12, 2016).

13. The proposed settlement is in the best interest of the Debtor's estate under the above factors, as follows:

(a) The Trustee contends that he is likely to prevail in an action to avoid the Transfers. As detailed above and in other pleadings, declarations, and proceedings before this Court, Rhew was operating a Ponzi scheme. The mere existence of a Ponzi scheme is sufficient to establish actual intent to hinder, delay, or defraud creditors, i.e. the Ponzi scheme presumption. *Barclay v. Mackenzie (In re AFI Holdings, Inc.)*, 525 F.3d 700, 704 (9th Cir. 2008). The Debtor had no other business dealings or existence other than to perpetuate the fraudulent scheme and such transfers were in furtherance of the scheme. Further, the Debtor was insolvent since its inception as a matter of law. *Cunningham v. Brown*, 265 U.S. 1, 8 (1924); *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006). The Debtor received no consideration in return for the Transfers. However, in order to prevail,

4

the Trustee would need to file an adversary proceeding against Pintail and litigate these factual and legal issues and address any defenses raised by Pintail. The Settlement Payment reflects these issues and the cost of obtaining a judgment.

(b) Pintail has represented that its business operations are struggling, it has limited funds to repay the Transfers, and that its only asset is encumbered real estate. At this time, the Trustee does not have information to dispute Pintail's contentions, but collectability has been raised as an issue. This factor favors settlement.

(c) With respect to the complexity of the litigation and associated expense, inconvenience, and delay necessarily attending it, the cost and expense to the estate to pursue Pintail would likely exceed the difference between the Transfers and the Settlement Payment. In the event the Trustee were able to obtain a judgment in this Court, enforcing a foreign judgment in another jurisdiction presents additional costs of collection. Obtaining a significant portion of the Transfers without having to litigate these issues is a benefit to the Debtor's estate.

(d) This settlement is in the best interest of creditors. It avoids the need to file an adversary proceeding. The settlement ensures that a large portion of the amount in controversy is returned to the bankruptcy estate without significant administrative costs and removes all risk of litigation.

14. The proposed settlement is in the best interest of the estate.

15. Trustee recommends that the Court approve this settlement and compromise, after notice and the opportunity for hearing, as provided in Rule 9019 of the Federal Rules of Bankruptcy Procedure.

WHEREFORE, the Trustee respectfully requests that the Court, enter an Order after notice

and opportunity for hearing:

1. Approving this settlement and compromise in accordance with the terms stated herein; and

2. Granting such other and further relief as the Court deems just and proper.

This the 2nd day of June, 2025.

                                                     */s/Brian R. Anderson*
                                                     Brian R. Anderson
                                                     N.C. State Bar No. 37989
                                                     Fox Rothschild LLP
                                                     230 N. Elm St., Suite 1200
                                                     Greensboro, NC 27401
                                                     Telephone: (336) 378-5205
                                                     branderson@foxrothschild.com
                                                     *Attorney for Chapter 7 Trustee*

172833409.1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) |
| CHADLEY CAPITAL, LLC | ) CASE NO. 24-10170 |
| | ) |
| DEBTOR. | ) CHAPTER 7 |
| | ) |

### CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that the undersigned served a copy of the MOTION TO APPROVE COMPROMISE AND SETTLEMENT by electronic means or by depositing the same, enclosed in a postpaid wrapper, properly addressed to the following parties in interest, at their last known addresses as shown below, in a post office or official depository under the exclusive care and custody of the United States Postal Service:

Chadley Capital, LLC
c/o Josh Bennett
Bennett Guthrie, PLLC
1560 Westbrook Plaza Dr.
Winston-Salem NC 27103
*Debtor*

John Paul H. Cournoyer
U.S. Bankruptcy Court Administrator
101 South Edgeworth Street
Greensboro, NC  27401

Pintail Properties, LLC
Attn: Mr. Andrew L. Hilmer
P.O. Box 10126
Knoxville, Tennessee 37989

All parties that have filed a Notice
of Appearance in the case

Joshua B. Bishop, Esq.
Howard & Howard, P.C.
4820 Old Kingston Pike
Knoxville, Tennessee 37919
*Counsel for Pintail Properties, LLC*

This the 2nd day of June, 2025.

/s/ Brian R. Anderson
Brian R. Anderson,
N.C. State Bar No. 37989
Fox Rothschild LLP
230 N. Elm Street, Suite 1200
Greensboro, NC 27401
*Attorney for Chapter 7 Trustee*

172833409.1