**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CONSOLIDATED ESTATE OF** | ) | **CASE NO. 24-10170** |
| **CHADLEY CAPITAL, LLC AND** | ) | |
| **GRACE MCLAIN CAPITAL** | ) | |
| **ADVISORS, LLC** | ) | |
| **DEBTOR.** | ) | **CHAPTER 7** |
| | ) | |
| | ) | |

**MOTION TO APPROVE COMPROMISE AND SETTLEMENT**

NOW COMES Brian R. Anderson, Trustee for the consolidated bankruptcy estate of

Chadley Capital, LLC and Grace McLain Capital Advisors, LLC (the "Debtor"), by and through

counsel, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and moves the Court

for an order approving a compromise and settlement between the Trustee, on the one hand, and

Christopher and Stephanie Walser (collectively, the "Walsers"), on the other, and, in support of

said Motion, respectfully shows unto the Court the following:

1.      On March 12, 2024, an involuntary Chapter 7 petition was filed against Chadley

Capital, LLC.  On April 5, 2024, an order for relief was entered against Chadley Capital, LLC.

2.      On July 7, 2025, the Court substantively consolidated Chadley Capital, LLC and

Grace McLain Capital Advisors, LLC, effective as of the petition date.

3.      The Trustee is the duly authorized and acting Chapter 7 Trustee for the Debtor.

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334,

and this matter is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28

U.S.C. §§ 1408 and 1409.

5.      William Rhew, III ("Rhew") is the sole owner and managing member of the Debtor.

181989826.1

1

6.      The Walsers were investors in the Debtor.  Beginning in early 2019, the Walsers and the Debtor entered into a Subordinated Note where the Walsers invested a total of $15,000.00 in the Debtor.

7.      Between June 13, 2019 and April 3, 2023, the Debtor transferred a total of $25,220.00 to the Walsers (the "Transfers").

8.      The Walsers contend that as of the petition date they were owed $19,320.00 by the Debtor, as evidenced by Claim No. 32 filed in this case on June 27, 2024 ("Claim No. 32").

9.      As detailed in the Court's July 7, 2025 Order Granting Chapter 7 Trustee's Motion for Substantive Consolidation and in other matters in this case, the Debtor was a Ponzi scheme created by Rhew.  In connection with this scheme, investors were led to believe that their investments were being used by the Debtor to operate in the receivable financing industry as a factoring company.  In reality, the Debtor had no legitimate business operations.  The Debtor did not operate in the global factoring industry.  It did not have a business buying credit receivables or lending funds to companies.  It did not have any revenue or any legitimate source of income other than investor funds solicited under false pretenses.  Instead, the Debtor used investor funds to make payments to earlier investors, to finance Rhew's personal lifestyle, and to benefit himself or his other business ventures.  By its very nature as a Ponzi scheme, the Debtor was insolvent since its inception and at the time of the Transfers.  At no point did the Debtor have any legitimate source of funds or revenue other than investor money that was intended to be invested in a factoring company.

10.      The Trustee made demand on the Walsers for repayment of the Transfers, contending that the Transfers were made by the Debtor with the intent to hinder, delay, and defraud creditors of the Debtor, that the Debtor was insolvent when the Transfers were made, and that the

2

Walsers did not provide the Debtor with reasonably equivalent value in exchange for the Transfers. In addition, the Trustee contends that not only are the Walsers "net winners" in the Debtor's Ponzi scheme such that the Walsers are prohibited from retaining more distributions, whether characterized as repayment of principal or payment of accrued interest, than what was loaned or invested, but that the Walsers did not receive the Transfers in good faith.

11.     The Trustee contends that the Transfers are subject to avoidance under 11 U.S.C. §§ 544 and 548, N.C. Gen. Stat. §§ 39-23.4 and 39-23.5, 26 U.S.C. §§ 6502 and 6901, and 28 U.S.C. § 3304, and that the Walsers are liable for such Transfers under 11 U.S.C. § 550.

12.     The Walsers dispute the Trustee's contentions, contends that benefit, value or consideration was given for the Transfers, and that the Transfers were received in good faith without any knowledge of or any reason to suspect that any of the Transfers were made to hinder, delay or defraud creditors of the Debtor.

13.     The parties have engaged in discussions and negotiations concerning the Transfers and have agreed to settle their disputes pursuant to a Settlement Agreement, attached hereto and incorporated herein as Exhibit A, subject to Bankruptcy Court approval. A summary of the terms of the Settlement Agreement are as follows[1]:

(a)     The Walsers shall remit the sum of $15,000.00 to the Trustee within 30 days of the entry of an order approving this settlement (the "Settlement Payment");

(b)     The Walsers waive any claim arising from the Settlement Payment in the Debtor's case under 11 U.S.C. § 502(h);

(c)     Claim No. 32 shall be disallowed; and

(d)     Effective upon delivery of the Settlement Payment, the Walsers and the

---

[1] To the extent the summary of the terms in this paragraph and subparagraphs conflict with the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

181989826.1

bankruptcy estate agree to mutually release each other from any and all claims, other than

the obligations of the Settlement Agreement.

## LEGAL STANDARD AND ARGUMENT

14.     It is well established that "to minimize litigation and expedite the administration of

a bankruptcy estate," compromises are favored in bankruptcy. *See Myers v. Martin (In re Martin)*,

91 F.3d 389, 393 (3d Cir. 1996). A determination of whether to approve an application to

compromise is a matter within the sound discretion of the bankruptcy judge. *In re Final Analysis,

Inc.*, 417 B.R. 332, 341 (Bankr. D. Md. 2009).  "In deciding whether a settlement proposed by a

bankruptcy trustee should be approved, the bankruptcy court should make an informed,

independent judgment as to whether a settlement is fair and equitable and in the best interests of

the estate." *Safeco Ins. Co. of Am. v. Yaeger (In re Magna Corp.)*, No. 01-80763, 2003 WL

22078082, at *3 (Bankr. M.D.N.C. Aug. 29, 2003) (citing *Protective Comm. For Indep.

Stockholders Of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424 (1968) and *In re Energy Coop,

Inc.*, 886 F.2d 91 (7th Cir. 1989)).  "It is the court's responsibility to 'canvass the issues and see

whether the settlement "falls below the lowest point in the range of reasonableness."'" *Id.* (internal

citations omitted).  "Central to this determination is a comparison of the terms of the settlement

with the probable outcome and cost if the litigation or matter in dispute is not settled." *Id.*

15.     Factors to be considered in determining whether the settlement is within the range

of reasonableness include: (i) the probability of success in litigation, (ii) the likely difficulties of

collection, (iii) the complexity of the litigation involved, and the expense, inconvenience, and

delay necessarily attending it, and (iv) the paramount interest of the creditors.  *See In re Energy

Future Holdings Corp.,* 648 F. App'x 277, 281 (3d Cir. 2016); *In re Martin*, 91 F.3d 389, 393 (3d

Cir. 1996); *In re AuditHead, LLC*, 625 B.R. 319, 323 (Bankr. D.S.C. 2021); *In re D & R Distribs.*,

181989826.1

2016 WL 4821257, at *2 (Bankr. N.D. W.Va. Sept. 12, 2016).

16.    The proposed settlement is in the best interest of the Debtor's estate under the above factors, as follows:

(a)    The Trustee contends that he is likely to prevail in an action to avoid the Transfers.  As detailed above and in other pleadings, declarations, and proceedings before this Court, Rhew was operating a Ponzi scheme.  The mere existence of a Ponzi scheme is sufficient to establish actual intent to hinder, delay, or defraud creditors, i.e. the Ponzi scheme presumption. *Barclay v. Mackenzie (In re AFI Holdings, Inc.)*, 525 F.3d 700, 704 (9th Cir. 2008).  The Debtor had no other business dealings other than to perpetuate the fraudulent scheme and such transfers were in furtherance of the scheme.  Further, the Debtor was insolvent since its inception as a matter of law. *Cunningham v. Brown*, 265 U.S. 1, 8 (1924); *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006).  However, the Walsers has raised numerous defenses including, but not limited to, good-faith and value defenses. Litigating these issues would require an adversary proceeding with corresponding factual development and legal briefing, and the Settlement Payment reflects the claims, defenses, and costs of obtaining and enforcing a judgment. The compromise appropriately accounts for litigation risk and cost.

(b)    The Walsers ability to pay a judgment has not been raised as an issue in this matter. However, even where liability is established, collection can present additional cost and risk. Resolution by immediate payment avoids the uncertainty, cost, and delay inherent in post-judgment collection activities and benefits the estate. This factor favors settlement.

(c)    With respect to the complexity of the litigation and associated expense, inconvenience, and delay necessarily attending it, avoidance litigation based on alleged

181989826.1

Ponzi scheme transfers is factually and legally complex and would impose material administrative expenses and delay on the estate. The cost and expense to the estate to pursue the Walsers through discovery, dispositive motions, and potentially trial would exceed the difference between the Transfers and the Settlement Payment. Obtaining the return of these funds without having to litigate these issues benefits the Debtor's estate.

(d)    This settlement is in the best interest of creditors. The settlement promptly returns all "net winnings", plus additional amounts to the estate, avoids the cost and risk of litigation, and includes valuable concessions: the waiver of any claim under 11 U.S.C. § 502(h) relating to the Settlement Payment and the disallowance of Claim No. 32, which inure directly to the benefit of other creditors. These terms materially improve creditor recoveries relative to the litigation alternative.

17.    For these reasons, the Settlement Agreement is fair, equitable, and well within the range of reasonableness and should be approved under Bankruptcy Rule 9019, after notice and opportunity for hearing.

WHEREFORE, the Trustee respectfully requests that the Court enter an Order after notice and opportunity for hearing:

1.    Approving the Settlement Agreement between the Trustee and the Walsers in accordance with the terms summarized herein; and

2.    Granting such other and further relief as the Court deems just and proper.

This the 9TH day of February, 2026.

/s/Brian R. Anderson
Brian R. Anderson
N.C. State Bar No. 37989
Fox Rothschild LLP
230 N. Elm St., Suite 1200
Greensboro, NC 27401

181989826.1

Telephone: (336) 378-5205
branderson@foxrothschild.com
*Attorney for Chapter 7 Trustee*

181989826.1

# EXBIHIT A

# SETTLEMENT AGREEMENT

181989826.1

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") dated February 5th , 2026, by and between Christopher and Stephanie Walser (together, the "Walsers") and Brian R. Anderson, Chapter 7 Trustee (the "Trustee") for the consolidated bankruptcy estate of Chadley Capital, LLC and Grace McLain Capital Advisors, LLC (collectively, the "Debtor" and together with the Walsers, the "Parties"), Case No. 24-10170 (the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Middle District of North Carolina.

## RECITALS

WHEREAS, on March 12, 2024, an involuntary Chapter 7 petition was filed against Chadley Capital, LLC, and on April 5, 2024, an order for relief was entered against Chadley Capital, LLC;

WHEREAS, on July 7, 2025, the Court substantively consolidated Chadley Capital, LLC and Grace McLain Capital Advisors, LLC, effective as of the petition date;

WHEREAS, the Trustee is the duly appointed Chapter 7 Trustee for the Debtor;

WHEREAS, beginning in early 2019, the Walsers and the Debtor entered into a Subordinated Note where the Walsers invested a total of $15,000.00 with the Debtor;

WHEREAS, between June 13, 2019 and April 3, 2023, the Debtor transferred a total of $25,220.00 to the Walsers (the "Transfers");

WHEREAS, the Walsers contend that as of the petition date they were owed $19,320.00 by the Debtor, as evidenced by Claim No. 32 filed against the Debtor's estate on June 27, 2024 ("Claim No. 32");

WHEREAS, the Trustee contends that the Walsers are not only "net winners" in the Debtor's Ponzi scheme such that the Walsers are prohibited from retaining more distributions, whether characterized as repayment of principal or payment of accrued interest, than what was loaned or invested, but also did not receive the Transfers in good faith;

WHEREAS, the Trustee contends that the Transfers are subject to avoidance under 11 U.S.C. §§ 544, 548, N.C. Gen. Stat. §§ 39-23.4 and 39-23.5, 26 U.S.C. § 6901, and 28 U.S.C. § 3304, and that the Walsers are liable for such Transfers under 11 U.S.C. § 550;

WHEREAS, the Walsers dispute the Trustee's contentions and contend that benefit, value, or consideration was given for the Transfers and that the Transfers were received in good faith without any knowledge of or reason to suspect that any of the Transfers were made to hinder, delay, or defraud creditors of the Debtor; and

WHEREAS, the Parties have engaged in substantial discussions concerning the Transfers, and, following negotiations between the Parties and in the interest of avoiding further expense and

litigation, the Parties desire to amicably resolve their disputes and have reached an agreement to settle their disputes, subject to Bankruptcy Court approval, pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

## SETTLEMENT TERMS

1. Bankruptcy Court Approval. This Agreement is subject to approval by the Bankruptcy Court in the Bankruptcy Case. In the event this Agreement is not approved by the Court, this Agreement shall be null and void and without force or effect.

2. Payment. Within thirty days of entry of an order by the Court approving this Agreement in the Bankruptcy Case, the Walsers shall pay the total sum of $15,000.00 to the Trustee (the "Settlement Payment").

3. Mutual Releases. Effective upon delivery of the Settlement Payment, the Trustee, on behalf of the estate of Debtor, and the Walsers hereby release and discharge each other and their agents, servants, employees, partners, officers, directors, shareholders, subsidiaries, parents, affiliates, related entities, attorneys, predecessors, heirs, successors and assigns of and from any and all claims, debts, liabilities, liens, assessments, actions or causes of action of any kind or nature, existing, known or unknown, provided, however, that the Parties do not release each other from the obligations of this Agreement.

4. Disallowance of Claim No. 32. Upon entry of an order approving this Agreement, Claim No. 32 shall be disallowed.

5. No 11 U.S.C. § 502(h) Claim. The Walsers waive any claim she may be entitled to against the Debtor's bankruptcy estate as a result of payment of the Settlement Payment.

6. Entire Agreement. This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof, and this Agreement may not be amended except in writing signed by all of the Parties hereto.

7. Jointly Drafted. Each of the Parties hereto has had the opportunity to have counsel review this Agreement and this Agreement shall be deemed to have been jointly drafted by all Parties for the purpose of applying any rule of contract construction.

8. Benefit. This Agreement shall be binding upon and shall inure to the benefit of the Parties, their respective heirs, legal representatives, successors and assigns.

9. Authority. The undersigned acknowledge that each signatory Party hereto has full corporate power and authority to enter into this Agreement and to bind the Parties hereto and their successors and assigns.

10. Voluntary Act. The Parties acknowledge, represent and agree, each with the other, that they have read this Agreement and any documents referenced herein in their entirety, have consulted their respective attorneys concerning the same, if desired, and have signed the same as their free and voluntary act.

11. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which counterparts collectively shall constitute one instrument. Signatures may be exchanged by facsimile or electronic transmission, with original signatures to follow. Each Party to this Agreement agrees to be bound by its own facsimile and/or electronic signatures and agrees that it accepts the facsimile and/or electronic signatures of the other Parties hereto.

12. Severability. In case any one or more provisions of this Agreement shall be invalid, illegal and unenforceable in any respect, the validity, legality and enforceability of the remaining provisions in this Agreement will not in any way be affected or impaired thereby.

13. Attorneys' Fees and Costs. Each of the Parties shall bear its/his/her own attorneys' fees and costs.

14. Governing Law; Jurisdiction of Court. To the extent not governed by the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, without giving effect to rules governing the conflict of laws. Each Party expressly consents to the continuing exercise of jurisdiction by the Court over any and all claims or disputes arising out of this Agreement. Each Party agrees that the Court has jurisdiction to enter a final order approving this Agreement.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date first above written.

By: *Brian Anderson*
DocuSigned by:
A60F81F09148439

Brian R. Anderson, Chapter 7 Trustee for the consolidated bankruptcy estate of Chadley Capital, LLC and Grace McLain Capital Advisors, LLC and not individually

By: *Christopher Walser*

Christopher Walser

By: *Stephanie Walser*

Stephanie Walser

3

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **CONSOLIDATED ESTATE OF** | ) | **CASE NO. 24-10170** |
| **CHADLEY CAPITAL, LLC AND** | ) | |
| **GRACE MCLAIN CAPITAL** | ) | |
| **ADVISORS, LLC** | ) | |
| **DEBTOR.** | ) | **CHAPTER 7** |
| | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that the undersigned served a copy of the MOTION TO APPROVE COMPROMISE AND SETTLEMENT by electronic means or by depositing the same, enclosed in a postpaid wrapper, properly addressed to the following parties in interest, at their last known addresses as shown below, in a post office or official depository under the exclusive care and custody of the United States Postal Service:

Chadley Capital, LLC
Grace McLain Capital Advisors, LLC
c/o Josh Bennett
Bennett Guthrie, PLLC
1560 Westbrook Plaza Dr.
Winston-Salem NC 27103
*Debtor*

John Paul H. Cournoyer
U.S. Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC  27401

Christopher and Stephanie Walser
615 Gus Hill Road
Clemmons, NC 27012

All parties that have filed a Notice of Appearance in the case

This the 9TH day of February, 2026.

/s/ Brian R. Anderson
Brian R. Anderson,
N.C. State Bar No. 37989
Fox Rothschild LLP
230 N. Elm Street, Suite 1200
Greensboro, NC 27401
*Attorney for Chapter 7 Trustee*

181989826.1